UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
RONDALL POMPEY,

                        Plaintiff,             20 CV 4574 (FB) (RER)

       -against-

CITY OF NEW YORK,             **SECOND AMENDED COMPLAINT**
DAVID GRIECO,
DEVON BAKER,
MATTHEW WALKER, and,
HECTOR CASILLAS,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff Rondall Pompey, by his attorneys, as and for his Second Amended

Complaint, hereby alleges as follows:

## **PARTIES, VENUE and JURISDICTION**

1.      At all times hereinafter mentioned, plaintiff Rondall Pompey was an

adult male domiciled in Kings County, in the State of New York, upon information and belief:

2.      At all times hereinafter mentioned, defendant City of New York was a

municipal corporation duly organized and existing under and by virtue of the laws of the State

of New York and acting by and through its agencies, employees and agents, including, but not

limited to, the New York City Police Department ("NYPD"), and its employees.

3.      At all relevant times hereinafter mentioned, defendant David Grieco, tax

number 940216, was employed by the City of New York as a member of the NYPD. Grieco is

sued herein in his individual capacity.

4.      At all relevant times hereinafter mentioned, defendant Devon Baker,

shield number 1595, was employed by the City of New York as a member of the NYPD. Baker

is sued herein in his individual capacity.

5.      At all relevant times hereinafter mentioned, defendant Matther Walker, shield 3110, was employed by the City of New York as a member of the NYPD. Walker is sued herein in his individual capacity.

6.      At all relevant times hereinafter mentioned, defendant Hector Casillas, 952552, was employed by the City of New York as a member of the NYPD. Casillas is sued herein in his individual capacity.

7.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, and 42 U.S.C. § 1983.

8.      Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

9.      A Notice of Claim was timely served by the plaintiff upon the defendant City of New York.

9.      At least thirty days have passed since plaintiff's service of his Notice of Claim, and adjustment and payment thereof has been neglected or refused by the City of New York.

11.      Plaintiff has complied with all obligations, requirements, and conditions precedent to commencing an action against New York City under New York law.

## RELEVANT FACTS

10.      On Friday, September 27, 2019, at or about the late afternoon or early evening hours, plaintiff was lawfully present inside a store at the intersection of Avenue D and

Nostrand Avenue in Kings County, New York.

11.     Plaintiff was not committing and had not committed a crime or offense, nor had anyone claimed to the NYPD that plaintiff had engaged in criminal or offensive conduct.

12.     As plaintiff exited the store, he was stopped by a member of the NYPD.

13.     That officer, or another officer present with him, asked plaintiff his name. When plaintiff identified himself, one or more of the officers stated to him that they had a warrant for his arrest.

14.     Upon information and belief, this statement by the officer(s) to plaintiff was materially false, as there were no bench or arrest warrants for plaintiff, as the officers were well aware.

15.     Defendants Baker, Walker, and Casillas were present at this initial detention of the plaintiff and either made the false communications to plaintiff or heard them made and left them uncorrected.

16.     Baker, Walker, and Casillas then arrested and handcuffed plaintiff, or directed, caused, or otherwise brought about plaintiff's arrest and handcuffing (the "Arrest").

17.     Plaintiff asked why he was being arrested or what the warrant was for. Baker, Walker, and Casillas, and any other officers present, refused to tell him why, saying only he would find out at the precinct.

18.     Baker, Walker, and Casilas transported or caused plaintiff to be transported to the 67 precinct station house.

19.     Upon his arrival at the 67 station house, plaintiff was searched and

placed in a holding cell. He was not fingerprinted, photographed, nor processed.

20.     Notwithstanding their promise that he would be told why he was arrested when he reached the station house, plaintiff was told at any time why he had been arrested or what the putative warrant was for.

21.     Plaintiff was then removed from the cell and brought to a room inside the station house, where he was questioned by, among others, defendants Walker and Grieco.

22.      More specifically, plaintiff was asked about a shooting that had taken place approximately one week earlier.

23.     Based on the questions asked, it was clear that plaintiff was not a suspect in the prior shooting. Rather, the officers were interested in whether plaintiff witnessed anything or was aware of any facts relating to the shooting.

24.     Plaintiff answered the questions and explained that he did not have the information they were seeking. He expressed to them his anxiety over being arrested and asked to make a phone call to his family.

25.     The defendants refused to tell him why he had been arrested or what the putative warrant was for. They further stated–albeit falsely--that he was going to go through the system and would most likely not be released for several days. They also refused to allow him to call his family.

26.     The "motive for debriefing" was then memorialized, with Grieco's endorsement, as "firearm."

27.     The "summary of the investigation" was memorialized, in full, and also with Grieco's endorsement, as "AT TPO DEFT WAS OBSERVED WALKING ACROSS

AN INTERSECTION WITH MARKED CROSSWALKS AT ALL FOUR CORNERS, BY

CROSSING DIAGONALLY ACROSS THE INTERSECTION AND NOT USING THE

MARKED CROSSWALKS."

28.     At some point thereafter, plaintiff was brought back to the holding cell.

29.     Plaintiff was then released from the precinct station house.

30.     Plaintiff was not issued any summonses or desk appearance tickets, and was not otherwise criminally charged in any manner for any offense, including his putative offense of crossing the street outside of the intersection.

31.     There was no arrest or bench warrant for plaintiff, and the defendants' statements to plaintiff that there was such a warrant were knowingly false.

32.     An arrest report, assigned number K19648867-M, was created by Casillas in which he alleged that plaintiff was arrested because Casillas had observed plaintiff jaywalk or otherwise walk in the street outside the crosswalk.

33.     That arrest report was reviewed and approved by Grieco.

34.     Upon information and belief, both Casillas and Grieco were assigned to a command identified by the NYPD as 318 and were both assigned as Field Intelligence Officers at the time, although Grieco was acting in a supervisory role.

35.     The allegation that plaintiff had been jaywalking was untrue.

36.     Moreover, plaintiff was not arrested for allegedly engaging in criminal or unlawful activity or because the defendants believed that there was probable cause for his arrest. Rather, plaintiff was arrested by the defendants solely to force him to come to the precinct to be questioned by Grieco.

37.     Upon information and belief, contrary to the officers' statements to plaintiff at the time of his arrest, no arrest warrant for plaintiff existed, nor was there a reasonable basis to believe an arrest warrant existed.

38.     Upon information and belief, the sole basis and reason for the defendants' arrest of plaintiff was to make him available for questioning.

39.     Plaintiff was not asked if he would willingly come to the station house to speak with investigators. Rather, plaintiff was seized and forced to come to the precinct station house in handcuffs, where he was held against his will based on the false and fabricated story that plaintiff was lawfully under arrest for an unidentified crime until such time that he was released without explanation.

40.     That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

(Section 1983 False Arrest Claim Against the Individual Defendants)

41.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

42.     The individual defendants (Grieco, Baker, Walker, and Casillas) willfully and intentionally seized, searched, detained, and arrested plaintiff, and caused him to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

43.     Plaintiff had not been engaged in any criminal or unlawful conduct, nor

-6-

was he engaged in any conduct that could reasonably be viewed as criminal or unlawful.

44.     Despite the absence of sufficient legal cause, plaintiff was arrested and jailed.

45.     To the extent that any of the individual defendants did not affirmatively engage in this conduct, each such defendant was aware of or affirmatively sought to bring about his or her fellow officers' misconduct, had ample opportunity to intervene and prevent or limit the constitutional harms being visited on the plaintiff, but failed to intervene in any way.

46.     By so doing, the individual defendants subjected plaintiff to false arrest and imprisonment, and thereby violated and aided and abetted in the violation of plaintiff's rights under the Fourth Amendment of the United States Constitution.

47.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, emotional and physical injuries, and mental anguish.

## SECOND CAUSE OF ACTION

(Section 1983 Equal Protection Claim and/or Selective Prosecution Claim
Against the Individual Defendants)

48.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

49.     The defendants treated plaintiff in a markedly and significantly different manner than they do any other resident or person present in the City of New York.

50.     Upon information and belief, members of the public repeatedly,

flagrantly, and openly cross the City of New York's roadways outside of the crosswalks, otherwise engaging in what is known commonly as "jaywalking," and do so without any fear that they are going to be arrested or otherwise subjected to criminal process.

51.     Upon information and belief, the NYPD, even when authorized to do so, does not arrest people for jaywalking nor does it issues criminal summonses or desk appearance tickets for jaywalking.

52.     By choosing to arrest the plaintiff in this instance, the defendants were deliberately treating plaintiff in a manner that was inconsistent and contrary to how it chooses to treat the remainder of adults in the City of New York.

53.     The defendants had no legal authority to seize plaintiff or otherwise compel his appearance at the station house, much less to compel him to speak with officers investigating a crime.

54.     Defendants' disparate treatment of plaintiff was motivated not by any rational and reasonable factor related to his conduct or the law in question, but rather for an entirely ulterior and collateral motive: to forcibly bring him to the station house against his will and in violation of his constitutional rights under the Fourth and Fourteenth Amendments so that he could be questioned as a witness about a matter wholly unrelated to his arrest.

55.     Even if defendants' conduct is not related to plaintiff's membership in a protected class, there was no rational basis for defendants to arrest plaintiff or otherwise treat plaintiff differently than it does other similarly situated people.

56.     By arresting plaintiff for allegedly jaywalking, the defendants violated the Equal Protection Clause by their selective enforcement against or selective adverse treatment

of plaintiff.

57.     As set forth herein, plaintiff, when compared with others similarly situated, was selectively treated, and that this selective treatment was based on impermissible considerations.

58.     By engaging in such conduct, the defendants have violated the plaintiff's right to equal protection under the law as provided by the Fourteenth Amendment to the United States Constitution.

59.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, emotional and physical injuries, and mental anguish.

**THIRD CAUSE OF ACTION**

(Section 1983 *Monell* Claim Against the Municipal Defendant)

60.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

61.     In an Order dated November 25, 2009, in *Colon v. City of New York*, 09 CV 0008 (E.D.N.Y.), the Hon. Jack B. Weinstein reflected on the "evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department" and the "evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving" the falsification of the reasons for an arrest. Little has changed since this ruling some eleven-plus years ago.

62.     The City's casual, approving treatment of David Grieco's well documented history of unrepentant misconduct is itself evidence that the municipal defendant

has ratified the routine fabrication of evidence and misuse and abuse of authority by NYPD members generally, and defendant Grieco in particular, such that the foregoing violations of plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by the City of New York's deliberate indifference to the dangers posed by David Grieco and other, similar officers.

63.     The municipal defendant was on notice well before September 27, 2019, that defendant Grieco had a history of engaging in misconduct, including, but not limited to, unlawful and otherwise arrests and fabrications of evidence to justify those arrests. Notwithstanding such notice, the NYPD failed to take any meaningful supervisory action or otherwise reasonably respond to Grieco's conduct, covered up his further misconduct, and left Grieco in place to continue his pattern and practice of unconstitutional behavior.

64.     According to dockets of local state and federal courts, as itemized in the complaint in *Laroc, et al., v. City of New York, et al.*, 20 CV 5277 (MKB) (SMG), defendant Grieco has been named in numerous lawsuits concerning constitutional violations, including, but not limited to, the following:

      a.    *Wilson v. City of N.Y.*, 10 CV 4206 (E.D.N.Y.) (settled for $25,000)

      b.    *Inman v. Grieco*, 11 CV 1810 (E.D.N.Y.) (*pro se* case dismissed)

      c.    *Jimenez-Jenkins v. City of N.Y.*, 12 CV 0002 (E.D.N.Y.) (settled for $24,000)

      d.    *Jones v. City of N.Y.*, 12 CV 1580 (E.D.N.Y.) (settled for $65,000)

      e.    *Mitchell v. City of N.Y.*, 12 CV 0294 (E.D.N.Y.) (settled for undisclosed amount)

f.  *Myrick v. City of N.Y.*, 12 CV 2544 (E.D.N.Y.) (settled for $35,000)

g.  *Foster v. City of N.Y.*, 13 CV 5108 (E.D.N.Y.) (settled for $30,000)

h.  *Bannister v. City of N.Y.*, 13 CV 5886 (E.D.N.Y.) (settled for $75,500)

i.  *Kitchens v. City of N.Y.*, 13 CV 6105 (E.D.N.Y.) (settled for $11,500)

j.  *Shepard v. City of N.Y.*, 13 CV 6142 (E.D.N.Y.) (settled for $3,500)

k.  *Perry v. City of N.Y.*, 13 CV 7071 (E.D.N.Y.) (settled for $21,250)

l.  *Johnson v. City of N.Y.*, 13 CV 7173 (E.D.N.Y.) (Rule 68 judgment for $7,501, and $15,000 in attorney's fees for one plaintiff, defense verdict for the other)

m.  *Walker v. City of N.Y.*, Index No. 5360/2014 (Kings Cnty.) (settled for $22,500)

n.  *Walker v. City of N.Y.*, Index No. 7761/2014 (Kings Cnty.) (settled for $60,000)

o.  *Goodloe v. City of N.Y.*, Index No. 515363/2015 (Kings Cnty.) (dismissed on jurisdictional grounds)

p.  *Walston v. City of N.Y.*, 15 CV 4480 (E.D.N.Y.) (summary judgment to defendants)

q.  *Green v. City of N.Y.*, 15 6041 (E.D.N.Y.) (settled for $10,000)

r.  *Burgess v. City of N.Y.*, Index No. 523191/2016 (Kings Cnty.) (pending)

s.  *McClarin v. City of N.Y.*, 16 CV 6846 (E.D.N.Y.) (pending)

t.  *Mathison v. City of N.Y.*, Index No. 501518/2017 (Kings Cnty.) (settled for $12,000)

u.  *Scott v. City of N.Y.*, 17 CV 1141 (E.D.N.Y.) (settled for $52,500)

     v.       *Vargas v. City of N.Y.*, Index No. 502637/2018 (Kings Cnty.) (pending)

     w.      *Grantham v. City of N.Y.*, Index No. 514006/2018 (Kings Cnty.) (pending)

     x.      *Hines v. City of N.Y.*, 18 CV 4678 (E.D.N.Y.) (settled for $75,500)

65.     Grieco joined the NYPD in early 2006. Over the past 15 years, according to the CCRB's Members of Service Records website search engine,  he has amassed at least 32 CCRB complaints, six of which were substantiated.

66.     However, according to the website www.50-a.org, Grieco has been even more profilic, garnering 69 separate charges spread over 31 different complaints, with 12 such allegations substantiated.

67.     The NYPD's Internal Affairs Bureau ("IAB") records are not yet publicly available, but as of 2016, IAB had substantiated seven different allegations of improper memo book entries and two failures to complete a stop and frisk report. More significantly, at least two of Grieco's substantiated failures to document his activities occurred in the context of an improper warrantless home entry. It was determined by CCRB and IAB, respectively, that on two different occasions Grieco improperly entered and private residences. These are but a handful of allegations that were before the IAB to the effect that Grieco has engaged in unlawful searches, home entries, improper stop and frisks, and similar conduct evincing a lack of concern for basic constitutional prohibitions on police abuses of authority. These allegations were detailed in an unsealed memorandum of law in *Johnson v. City of N.Y.*, 13 CV 7173 (E.D.N.Y.) in Document 68, docketed on May 9, 2016.

68.     Yet, not only has Grieco avoided any meaningful discipline, the NYPD

-12-

has actually promoted him multiple times. He was made detective on August 1, 2016, and then promoted to Sergeant on June 30, 2017.

69.    Notwithstanding the above litany of complaints concerning Grieco's propensity for misconduct and utter disregard for the constitution, there were, on information and belief, no meaningful investigations into many or most of these complaints, and certainly no attempt whatsoever by the NYPD or the City of New York to examine Grieco's conduct holistically. Put differently, the City was aware of this pattern of misconduct and dishonesty by Grieco. Yet, upon information and belief, there was no effort to modify, increase, supplement, or otherwise intensify Grieco's supervision, or otherwise ensure that he had not and would not engage in or continue to engage in such blatant misconduct.

70.    The City of New York's refusal to impose any discipline, to conduct any meaningful investigation, or to otherwise express even the slightest scintilla of concern that Grieco was prone to deliberate and repeated unconstitutional searches, seizures, and arrests was a clear and unequivocal endorsement of Grieco's misconduct that could only be understood as a ratification of his past misconduct, and an encouragement that he continue to use force in this fashion.

71.    Such actions by the City of New York are a reflection of the municipal defendant's repeated and untenable abdication of its responsibility to supervise and discipline its employees, and to otherwise protect the public from officers the NYPD knows are a threat to the public's safety and well being, and evince a complete disregard and deliberate indifference to the rights and welfare of those with whom these officers, and Grieco in particular, interact.

-13-

72.     By leaving Grieco unattended and in a supervisory role means that not only will his misconduct continue unabated, it will be taught and passed on to younger officers in his command, who will quickly learn–as has defendant Casillas–that they are free to behave as they see fit, with the blessings of the NYPD and the City of New York.

73.     These actions further reflect a policy, custom, and practice, or a ratification thereof through a demonstrated failure to act to curtail such behavior, and thus the aforesaid policies, procedures, regulations, practices and/or customs of the municipal defendant were, collectively and individually, a substantial factor in bringing about the aforesaid constitutional violations by the individual defendants generally, and Grieco in particular.

74.     The City's abdication of its duty to supervise its police officers, and its tacit, if not overt, endorsement of excessive force and similar misconduct, reflects the City's deliberate indifference to the established risks that such conduct poses to the public at large.

75.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, emotional and physical injuries, and mental anguish.

## FOURTH CAUSE OF ACTION

(State Law Claim Against the Municipal Defendant)

76.     Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

77.     Plaintiff was arrested without probable causes and imprisoned against his will when they intentionally, willfully, maliciously, and/or with reckless disregard arrested him

without probable cause or lawful order.

78.     At no time was there any objectively reasonable basis for the defendants to arrest plaintiff, nor was it reasonable for the officers to believe that the arrest of plaintiff was justified or otherwise permissible.

79.     The City of New York, is vicariously liable to plaintiff for the acts of the individual defendants who were at all relevant times acting within the scope of their employment as subordinate officers and agents of the municipal defendant.

80.     Therefore, the individual defendants and City of New York are liable to plaintiff under state law, for false arrest and false imprisonment under New York law.

81.     By reason thereof, defendants have caused plaintiff to suffer the deprivation of his liberty, loss of his constitutional rights, emotional and physical injuries, and mental anguish.

**[Remainder of Page Intentionally Blank]**

-15-

## **DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.


WHEREFORE, the plaintiff demands judgment against the individual defendants and defendant City of New York as follows:

i.    actual and punitive damages against the individual defendants in an amount to be determined at trial;

ii.   actual damages against defendant City of New York in an amount to be determined at trial;

iii.  statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. § 1988 and New York common law, disbursements, and costs of the action; and

iv.   such other relief as the Court deems just and proper.


Dated:   New York, New York
        June 28, 2021

LUMER LAW GROUP
Attorneys for Plaintiff

Michael Lumer, Esq.
233 Broadway, Suite 900
New York, New York 10279
(212) 566-5060

-16-